## NEWBERRY TOWNSHIP

v.

## Ray STAMBAUGH, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 23, 2004.

Decided April 22, 2004.

Eugene R. Campbell, York, for appellant.

John C. Herrold, York, for appellee.

BEFORE: McGINLEY, Judge, and LEAVITT, Judge, and MIRARCHI, JR., Senior Judge.

OPINION BY Judge LEAVITT.

■ Ray Stambaugh (Stambaugh) appeals from the August 27, 2003 order of the Court of Common Pleas of York, County (trial court) granting Newberry Township's motion for judgment on the pleadings.[1] In doing so, the trial court relied on

---

1. A motion for judgment on the pleadings should be granted only where the pleadings demonstrate that no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law. *Hammerstein v. Lindsay, M.D.*, 440 Pa.Super. 350, 655 A.2d 597, 600 (1995). In reviewing trial court's decision to grant judgment on pleadings, the scope of review of appellate court is plenary; reviewing court must determine if the action of trial court was based on clear error of law or whether there were facts disclosed by pleadings which should properly go to jury. An appellate court must accept as true all well-pleaded facts of the party against whom the motion is made, while considering against him only those facts which he specifically admits. Neither party can be deemed to have

*Township of West Manchester v. Mayo*, 746 A.2d 666 (Pa.Cmwlth.2000) where this Court held that a resident is responsible for any charge lawfully imposed by a municipality to pay for trash collection services. The sole issue before us here is whether the municipality has the authority to file a municipal claim against a resident's property when the resident refuses to pay for trash collection services that he did not use.

Newberry Township is a second class township subject to The Second Class Township Code.[2] Pursuant to the terms of The Second Class Township Code and the West Manchester Township Municipal Waste Collection and Disposal Ordinance (Ordinance), the Township entered into an agreement with a private contractor for the collection, transportation and disposal of municipal waste.[3] The Ordinance requires residents to make quarterly payments for the service; if a resident refuses to pay, then the Township has the authority to file a municipal lien against his property.[4] Since the inception of the program, Stambaugh has refused to pay for the service. As a result, on December 29,

1998, the Township filed a municipal claim against Stambaugh in the amount of $395.97 for trash collection services rendered through December 31, 1998.

On March 13, 2003, the Township filed a writ of scire facias notifying Stambaugh of the lien against his property and offering him an opportunity to present a defense. Stambaugh filed an affidavit of defense wherein he alleged that he does not use the trash services because he recycles his trash and "neither the Municipal Lien Law nor [T]he Second Class Township Code specifically gives a Township the right to impose a municipal lien for trash removal services." Stambaugh Affidavit, ¶¶ 2 & 6.

On April 24, 2003, the Township filed a motion for judgment on the pleadings. Stambaugh did not respond to the Township's motion. On July 15, 2003, the trial court granted the Township's motion "based on *Township of West Manchester v. Mayo*, 746 A.2d 666 (Pa.Cmwlth.2000), wherein the same defenses raised by the defendant were rejected as a matter of law."[5] Stambaugh then brought the instant appeal.

admitted either conclusions of law or unjustified inferences. *Id.* at 600–601.

In conducting its inquiry, the court should confine itself to the pleadings themselves and any documents or exhibits properly attached to them. Only when the moving party's case is so clear and free from doubt such that a trial would prove fruitless will an appellate court affirm a motion for judgment on the pleadings. *Id.* at 601.

2. Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. §§ 65101–68701.

3. Section 2102 of The Second Class Township Code provides that the board of supervisors may dispose of, by contract or otherwise, ashes, garbage, solid waste and other refuse materials. 53 P.S. § 67102. Section 100–4 of the Ordinance provides that "only the contractor authorized by the township shall collect, transport and dispose of municipal waste

from dwellings within West Manchester Township."

4. Section 2105 of The Second Class Township Code provides that the board of supervisors may establish, alter, charge and collect rates and other charges to collect and remove solid waste. 53 P.S. § 67105. Section 100–13 of the Ordinance provides, "[e]ach owner of a dwelling unit … shall pay to the township a quarterly fee for the disposal of municipal waste …. [a]ny quarterly fees remaining unpaid sixty (60) days after the due date shall be filed as a municipal lien in accordance with the provisions of the Municipal Lien Law."

5. On August 27, 2003, the trial court entered a judgment against Stambaugh in the amount of $395.97 plus interest. On September 25, 2003, Stambaugh filed a bond in the amount of $476.00 with his appeal.

On appeal, Stambaugh contends that the trial court erred by granting the Township's motion for judgment on the pleadings because *Mayo* is distinguishable. Unlike the defendant in *Mayo*, it is undisputed that Stambaugh does not generate trash. Further, the defendant in *Mayo* "had waived the issue of whether the Township could properly file a lien for trash collection." Stambaugh Brief at 7.

In *Mayo*, a second class township adopted an ordinance providing for the collection and disposal of trash by a contractor. Mayo refused to pay the quarterly trash disposal fee and as a result the township filed a municipal claim against him. Both sides filed motions for summary judgment, and the trial court granted the township's motion. In his appeal, Mayo contended, in relevant part, that the township lacked the authority to adopt its ordinance because The Second Class Township Code does not provide for such a procedure. Further, Mayo contended that because he did not generate any trash; he should not have to pay the fee for trash collection.

This Court affirmed the decision of the trial court. We concluded that Mayo waived the issue relating to the township's authority to file a municipal claim.[6] Further, we found that Mayo had generated waste. Nevertheless, we also stated that "even if a resident does not generate any refuse or waste, the resident is still responsible for any service fee or charge lawfully imposed by a municipality for the collection and disposal of refuse." *Id.* at 671.[7]

■ Based on our holding in *Mayo*, Stambaugh is obligated to pay for the trash collection service regardless of whether he generates trash. Thus, the sole issue before us is whether the Township could file a municipal claim against Stambaugh to collect outstanding fees for trash collection services.

Section 3601(a) of The Second Class Township Code (Code)[8] addresses the filing of municipal claims. It states:

(a) *In addition to the remedies under law for the filing of liens for the collection of municipal claims,* a township may proceed for the recovery and collection of any municipal claim by action of assumpsit against the person who was the owner of the property when the improvement was completed, even if

---

**6.** The Court, however, noted that:

Section 1 of the Municipal Claims and Liens Act ... states that a municipal claim includes the claim arising out of, or resulting from a service supplied. In addition, Section 4 of the Municipal Claims and Tax Liens Act states that '[t]he lien for ... water rates, lightening rates, or sewer rates, **or rates for any other service furnished by a municipality,**—shall exist in favor of, and the claim therefore may be filed against the property thereby benefited by, the municipality extending the benefit....'
*Mayo*, 746 A.2d at 668 n. 4 (citations omitted) (emphasis in original).

**7.** The *Mayo* Court relied on *Borough of Coopersburg v. Cliff*, 16 Pa. D. & C.2d 576 (Lehigh Ct.Com.Pl., 1958) and *City of Princeton v.*

*Stamper*, 195 W.Va. 685, 466 S.E.2d 536 (1995) to support its conclusion. In *Coopersburg*, the court of common pleas noted that it could be assumed that every household will have some garbage that it cannot dispose of without violating the ordinance; if the household personally hauls its garbage outside the borough limits the borough cannot be expected to police the streets to determine what household units are vacant or whether they have otherwise disposed of their garbage. In *City of Princeton*, the court reasoned that appellants are users of the municipal service regardless of how they dispose of waste because they are benefited from the collection and disposal of waste from other premises. *Mayo*, 746 A.2d at 670–671.

**8.** Added by the Act of November 9, 1995, P.L. 350.

there was a failure on the part of the township or its agents to enter the municipal claim as a lien against the property assessed for the improvement, and for the recovery of which the action of assumpsit was brought.

53 P.S. § 68601. One of those "remedies under law," is provided in the Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§ 7101–7505, popularly known as the Municipal Claims and Tax Liens Law (Tax Liens Law).

■ The Tax Liens Law provides that "[a]ll municipal claims [9] which may be lawfully imposed or assessed on any property in this Commonwealth . . . shall be and they are hereby declared to be a lien on said property." Section 3 of the Tax Liens Law, 53 P.S. § 7106(a). Section 4 provides that "[t]he lien for . . . water rates, lightening rates, or sewer rates, or rates *for any other service furnished by the municipality*,—shall exist in favor of, and the claim therefore may be filed against the property thereby benefited by, the municipality extending the benefit." 53 P.S. § 7107 (emphasis added). Thus, we conclude that the law permits a municipality to file a claim against property where the owner refuses to pay for the service supplied by the municipality.

■ Further, the law provides the means by which a municipality can enforce payment of a municipal claim. The municipality can enforce payment of a municipal claim by filing a writ of scire facias. *See* 53 P.S. § 7185 ("[t]he claim shall be sued by writ of scire facias.").[10] If the owner does not dispute the claim and assessment, he simply pays and removes the lien. *Shapiro v. Center Township, Butler County*, 159 Pa.Cmwlth. 82, 632 A.2d 994, 997 n. 3 (1993). If the owner, however, contests the claim, he can file and serve notice upon the municipality to issue a writ of scire facias or, in the alternative, the municipality may pursue the writ without prompting the owner. *Id.* at 997–998. In response, the owner files an affidavit of defense wherein he raises all defenses that he has to the municipal claim. *Id.* at 997.

Accordingly, we conclude that here the Township followed the proper procedure when it sought to collect outstanding fees for trash disposal services by filing a municipal claim and a writ of scire facias against Stambaugh's property. In accordance with our holding in *Mayo*, Stambaugh was obligated to pay the fees for the trash collection service offered by the Township regardless of whether he used this service.

---

**9.** The law defines municipal claim as "the claim arising out of, or resulting from, a tax assessed, *service supplied*, work done, or improvement authorized and undertaken, *by a municipality*." 53 P.S. § 7101 (emphasis added). A municipality is "any county, city, borough, incorporated town, *township*, school district, county institution district, and a body politic and corporate created as a Municipal Authority pursuant to law." *Id.* (emphasis added).

**10.** A writ of scire facias is a writ used to enforce payment of a municipal claim out of the real estate upon which such claim is a lien. *Fox Chapel Sanitary Authority v. Abbott*, 34 Pa.Cmwlth. 637, 384 A.2d 1012, 1013 n. 1

(1978). Specifically, the writ is a mandate to the sheriff which recites the occasion upon which it issues, which directs the sheriff to make known the parties named in the writ that they must appear before the court and requires the defendant to appear and show cause why the municipality should not be permitted to take some step. *Shapiro v. Center Township, Butler County*, 159 Pa.Cmwlth. 82, 632 A.2d 994, 997 n. 3 (1993). The object of a writ of scire facias is ordinarily to ascertain the sum due on a lien of record and to give the defendant an opportunity to show cause why the municipality should not have execution. *Id.*

Thus, we affirm the decision of the trial court.

## ORDER

AND NOW, this 22nd day of April, 2004 the order of the Court of Common Pleas of York County dated August 27, 2003 in the above-captioned matter is hereby affirmed.